### In re GREEMAN MOTORS, INC.

### GREEMAN MOTOR, INC., Plaintiff,

### v.

### UNITED NEW MEXICO BANK AT MIMBRES VALLEY, Defendant.

Bankruptcy No. 81–00933 R L.
Adv. No. 84–0353 R.

United States Bankruptcy Court,
D. New Mexico.

April 23, 1985.

---

Stephen Curtis, Albuquerque, N.M., for Debtor.

Gail Gottlieb, Albuquerque, N.M., for United New Mexico Bank.

## MEMORANDUM OPINION

STEWART ROSE, Bankruptcy Judge.

The issue in this adversary proceeding is whether the Chapter 11 debtor-in-possession, Greeman Motors, Inc., can avoid a lien held by United New Mexico Bank at Mimbres Valley (the Bank) on the debtor's personal property. The debtor contends that the security interest was not properly perfected, and can be avoided under the strong arm clause, 11 U.S.C. § 544. The debtor was represented by Stephen Curtis of Melton and Puccini, P.A.; the Bank by Gail Gottlieb of Sutin, Thayer and Browne.

The parties stipulated to most of the relevant facts. On July 2, 1980 the debtor, an automobile dealer, granted the Bank a security interest in its furniture, fixtures, accounts receivable and inventory to secure payment of a note in the approximate amount of $250,000. A security agreement was signed by the parties. The Bank sent a copy to the Luna county Clerk's office, with instructions to file it in the chattel records.[1] The Clerk received the papers, but instead recorded the agreement in the real property records,[2] and returned a conformed copy to the Bank. No indication of the security interest transaction appeared in the chattel files.

The only witness at trial, a Luna County abstractor, testified that it was the practice of the Luna County Clerk to take in all documents presented for filing or recording over one counter, and to then post the item to the appropriate book and index.

The debtor argued that because there was nothing relating to the transaction filed in the chattel records, the security agreement is unperfected, and subject to the debtor's avoiding powers. The debtor also argued that because the Bank received a copy of the security agreement with the Clerk's stamp and recording information on it, the Bank had at least constructive notice of the error, and should not now be entitled to enforce its "secret" lien.

The Bank's primary argument was essentially that under N.M.Stat.Ann. § 55–9–403(1) (1978) presentation for filing of a financing statement with either tender of the filing fee or acceptance of the statement by the filing officer constitutes filing, and all other conditions having been fulfilled, perfection of the security interest. According to the Bank's position, what the Clerk did with the financing statement and whether the Bank had any knowledge of the error is immaterial. The Bank cited *Shaffer v. McCulloh* 38 N.M. 179, 29 P.2d 486 (1934), a pre-U.C.C. case which held that negligence in a County Clerk's office

---

1. The security agreement sufficed as a financing statement under New Mexico Stat.Ann. § 55–9–402.

2. The security agreement did not contain any description of real property, but why it was recorded rather than filed was not made an issue.

does not render a chattel mortgage void, in support of its position.

There do not seem to be any New Mexico cases directly on point and few from other jurisdictions.[3] However, the law, when read in conjunction with the official comments is clear and unambiguous.

N.M.Stat.Ann. § 55–9–403(1), as to what constitutes the filing required by N.M.Stat. Ann. § 55–9–302 for perfection of a security interest states:

(1) Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this article.

■ The evidence in this case indicates that the security agreement was presented to the proper filing office, and was accepted by the filing office. This constituted filing, and was required to perfect the Bank's security interest. As Official Comment 1 to N.M.Stat.Ann. § 55–9–407 makes clear, nothing more is required:

(1) Subsection (1) requires the filing officer upon request to return to the secured party a copy of the financing statement on which the material data concerning the filing are noted. Receipt of such a copy will assure the secured party that the mechanics of filing have been complied with. Note, however, that under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

■ As to the Bank's constructive knowledge of the error, a secured party does not have a duty to retain a copy of what was filed. Section 55–9–407 requires the noting of filing information on a copy

only upon the request of the person filing and is inconsistent with any such duty.

■ If a secured party has no obligation to obtain the filing information, it can hardly have an obligation to insure that the Clerk's office was not negligent in performing its duties. Such a duty, had the drafters chosen to create it, could on occasion avoid problems with subsequent lenders and/or create windfalls for unsecured creditors. But the drafters instead chose to rely on the abilities of the Clerk's office (and implicitly, candid financial statements) for the protection of lenders. This Court will not impose a further, non-statutory requirement for perfection.

The Bank having done what was required to perfect its security interest, and the risk of negligence in the Clerk's office falling elsewhere, the relief requested by the Plaintiff will be denied. The Plaintiff's Motion for Reconsideration raises issues argued albeit briefly, at trial which do not affect the Court's decision. Counsel for the Bank shall prepare and submit an appropriate form of Judgment.

---

3. See, for example *McMillin v. First National Bank and Trust Co. of Ponca City,* 407 F.Supp. 799, 19 U.C.C.Rep. 322 (1975) and the cases cited therein.